**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Paul Hougas, | No. CV-23-08572-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Kenneth Paul Hougas' appeal from the Commissioner of the Social Security Administration's ("SSA") final decision denying social security disability benefits. (Doc. 1). The appeal is fully briefed, (Docs. 13, 18, 21), and the Court now rules.

## I.    BACKGROUND

The issues presented in this appeal are:

1. Whether the ALJ failed in not fully crediting Plaintiff's symptom testimony;

2. Whether the ALJ erred in finding Hypothyroidism and Oxygen-dependency to be non-severe impairments and include them in the residual functional capacity ("RFC");

3. Whether the ALJ erred in not giving controlling weight to the opinion of Dr. Meier as a treating physician;

4. Whether the ALJ supported her finding that Plaintiff could perform his former work; and

5. Whether the jobs cited by the Vocational Expert ("VE") meet the minimum Significant Number of Jobs in the National Economy ("SNOJ") threshold. (*See* Doc. 13 at 5).[1]

### A.  Factual Overview

Plaintiff was thirty-three years old on his alleged disability onset date of May 1, 2012. (Doc. 10-10 at 13). He has education at least through high school and reports past work as a security guard, a chief security guard, a department store manager, and a stock clerk. (Doc. 13 at 2). Plaintiff alleges that he suffers from degenerative disc disease, osteoarthritis, sciatica, mild CHF, hypothyroidism, disfunction of his right knee and left shoulder, asthma, essential hypertension, morbid obesity, and oxygen dependency. (*Id.*) Plaintiff's claims were initially denied after the SSA Appeals Council adopted the decision of an ALJ issued December 28, 2017. (Doc. 10-10 at 13). Plaintiff appealed and the district court vacated the ALJ's decision and remanded it, indicating that the ALJ had not properly considered Dr. Meier's medical opinions. (*Id.*) A new hearing was held on January 9, 2023. (*Id.*) The ALJ issued an unfavorable decision on April 12, 2023. (*Id.* at 28). In her decision, the ALJ found that based on Plaintiff's August 7, 2012, social security application, Plaintiff has not been disabled—as defined in the Social Security Act—from August 7, 2012, through the date of the decision. (*Id.*) Plaintiff then sought review in this Court. (Doc. 1).

### B.  The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining

---

[1] The Court has reordered and reworded Plaintiff's issues on appeal to facilitate its analysis.

whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," e.g., doing "significant physical or mental activities;" and (2) "gainful," e.g., usually done "for pay or profit." 20 C.F.R. § 416.972(a)(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's RFC before proceeding to step four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is his ability to do physical and mental work activities "despite [his] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At step four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[his] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.*

§ 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to step five in the sequential evaluation process.

At step five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C.      The ALJ's Application of the Factors

Here, at step one, the ALJ concluded that Plaintiff "has not engaged in substantial gainful activity since May 1, 2012, the alleged onset date." (Doc. 10-10 at 16).

At step two, the ALJ determined that the following impairments were "severe": morbid obesity; thyroid disorder; lumbar degenerative disc disease; asthma; right shoulder degenerative joint disease; and COVID-19 infection. (*Id.*) The ALJ found that Plaintiff's impairments "significantly limit[ed] the ability to perform basic work activities as required by SSR 85-28." (*Id.*) The ALJ analyzed Plaintiff's claimed mental impairments of depression, anxiety, and opioid dependence under the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders. (*Id.* at 17). She found that Plaintiff's "medically determinable mental impairments of depression, anxiety, and opioid dependence, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (*Id.*) The ALJ explained by stating that Plaintiff's "medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the [Plaintiff]'s ability to do basic work activities . . . ." (*Id.* at 18).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meet or equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 19). The ALJ determined that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a),
> except for frequent bilateral overhead reaching; no climbing ladders, ropes,

or scaffolds; occasional climbing ramps or stairs; stooping, crouching, crawling, kneeling; occasional balancing as defined by the Selected Characteristics of Occupations (SCO); occasional exposure to excessive vibration; occasional concentrated exposure to pulmonary irritants, such as fumes, odors, dust, and gases; occasional concentrated exposure to poorly ventilated areas; occasional exposure to dangerous moving machinery; occasional exposure to unprotected heights; and no work near open flames, extreme nonweather related heat, flammable chemicals. Finally, he must be allowed to stand and stretch one minute every hour while remaining on task and at the work station.

(*Id.* at 20).

At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as chief guard as actually performed, reasoning that "[t]his work did not require the performance of work-related activities precluded by the claimant's residual functioning capacity." (*Id.* at 26). Accordingly, the ALJ found Plaintiff has not been under a disability—as defined in the Social Security Act—from May 1, 2012, through the date of the decision. (*Id.*)

## II.     STANDARD OF REVIEW

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d

1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.   DISCUSSION

Plaintiff raises five claims of error in the ALJ's analysis. (Doc. 13 at 5).  First, Plaintiff claims the ALJ erred in not fully crediting Plaintiff's symptom testimony. (*Id.*) Second, Plaintiff claims the ALJ erred by not including Plaintiff's oxygen dependency and hypothyroidism as severe impairments. (*Id.*) Third, Plaintiff claims the ALJ erred by not giving controlling weight to the opinion of Plaintiff's treating physician, Dr. Marshall Meier, M.D. (*Id.*) Fourth, Plaintiff claims that the ALJ did not support her conclusion that Plaintiff could return to his former work with substantial evidence. (*Id.*) Finally, fifth, Plaintiff claims that the three jobs cited by the VE do not meet the SNOJ threshold. (*Id.*)

### A.   Plaintiff's Symptom Testimony

First, Plaintiff argues that the ALJ did not give clear and convincing reasons supported by substantial evidence to partially discredit Plaintiff's testimony. (*Id.* at 21).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on

affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)); *Lingenfelter*, 504 F.3d at 1036. An adverse credibility finding is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

To assess credibility, the ALJ may consider, among other factors, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim*, 763 F.3d at 1163 (citation omitted). If the ALJ relies on these factors, and her reliance is supported by substantial evidence, the Court "may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

Plaintiff testified to the following symptoms:

> The claimant reported that he has degenerative disc disease and weighs 475 pounds at six feet four inches tall (Exhibit 2E). Due to his pain, he could not walk or stand for long because pain in his back increases, his medication makes him drowsy (Exhibit 4E), and he cannot sit long without pain even with back support (Exhibit 7E). The claimant's allegations as presented in the testimony are that he had always worked retail and security, but in 2012, he hurt his back helping his parents with yard work, and he has never been the same. Pain relievers reduce pain by thirty percent at most, and maybe by fifty percent on some days. When he worked as a security guard, he weighed only 365 pounds, but he now weighs 485 pounds. The longest he can sit is 45 minutes to one hour after which he must stand up and stretch. The longest he can stand is ten minutes. He can bend only partially, and he cannot pick things off the ground, and he can lift his arm only to his head. He might not be able to lift twenty-four pounds with one hand. He also has long COVID, and he cannot breathe well and uses oxygen.

(Doc. 10-10 at 21).

First, the ALJ found that Plaintiff was not malingering. (*Id.*)  The ALJ then found that Plaintiff had impairments that could be expected cause his alleged symptoms, but she did not fully credit his statements regarding the "intensity, persistence and limiting effects" of his symptoms because they were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) Because the ALJ did not find that Plaintiff was malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting Plaintiff's symptom testimony. It should be noted that the ALJ credited some of Plaintiff's symptoms and accounted for them by mentioning each symptom and the corresponding limitations and then connecting it to specific portions of the significantly limited RFC. (*See id.* at 21–22).

The ALJ addressed Plaintiff's physical examinations, stating that they are consistent with the RFC because the examinations "generally show minimally limiting findings as strength is typically normal in the bilateral upper and lower extremities, normal gait, and no distress." (*Id.* at 22). The ALJ supported this conclusion with a citation to numerous exhibits in the record. (*Id.*) The ALJ next explained that Plaintiff's "course of treatment, medications or other treatments currently or previously used  to alleviate symptoms and the nature and frequency of the [Plaintiff]'s attempts to obtain medical treatment for symptoms also reflects upon the severity of the [Plaintiff]'s impairments." (*Id.* at 22). The ALJ discredited some of Plaintiff's testimony because the testimony was inconsistent regarding whether pain medication improved his symptoms—first stating to medical providers that medication improved his pain, but then testifying that the medications did not eliminate his pain. Plaintiff's improvement with treatment constitutes a clear and convincing reason to partially discredit Plaintiff's subjective symptom testimony. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that evidence of effective treatment is sufficient to discount Plaintiff's testimony regarding symptom severity)); *see also Singh v. Comm'r of Soc. Sec. Admin.*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, at *2–3 (D. Ariz. Sept. 28, 2020) (affirming the ALJ's discounting of Plaintiff's testimony, in part, because

Plaintiff's conditions improved with treatment).

The ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with his daily activities. (Doc. 10-10 at 24). The ALJ stated:

> The claimant had sufficient capacity throughout the relevant period to perform activities such as watching young children (Exhibit 2F at p. 3), and he reported supervising the children and getting them ready for school (Exhibit 31F). The claimant was able to drive, and he could complete self-care activities including meals, hygiene, and light housework, although he did no chores (Exhibit 31F). He acknowledged that he got up with his children each morning, drove the three youngest to school, and then drove the oldest child to school. He did allege in is testimony that he stayed home until picking them up, lying down for most of the day, but nothing in the record establishes that he would need to lie down most of the day. To the contrary, his treating physician encouraged the claimant increase his activity (Exhibit 22F). He testified that he had to keep his legs elevated when sitting, but the record fails to show any physician or provider advising this. Further limitations beyond a residual functional capacity allowing the most restrictive level of exertion to account for the combination of morbid obesity with musculoskeletal and medical impairments are not necessary.

(*Id.*) While a claimant need not "vegetate in a dark room" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quotation omitted), daily activities undertaken by the claimant can be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment, even when those activities suggest some difficulty functioning. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010). Thus, the Court finds that even though Plaintiff stated that he had difficulty functioning, the ALJ properly discounted his credibility to the extent that her daily activities were inconsistent with an inability to work in any capacity. *See, e.g.*, *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity." (citations omitted)). Accordingly, the Court finds that the ALJ gave clear and convincing reasons to partially discount Plaintiff's subjective symptom testimony, and the ALJ supported these reasons with substantial evidence.

### B.    Hypothyroidism and Oxygen Dependency

Plaintiff next argues the ALJ erred in finding his hypothyroidism and oxygen dependency to be non-severe impairments. (Doc. 13 at 5). However, Plaintiff does not appear to develop his argument regarding the hypothyroidism beyond mentioning it as an issue at the beginning of his brief. Thus, the Court finds that Plaintiff has waived this argument. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (stating that a reviewing court in social security proceedings does not address arguments that a party failed to argue with specificity their briefing).

The Court will next address Plaintiff's argument that his oxygen dependency should have been considered a severe impairment. Plaintiff asserts that the ALJ's failure to find Plaintiff's oxygen dependency to be a severe impairment "establishes that she did not consider O2-dependency at Steps 4 and 5 in combination with all of [sic] impairments that she found to be either severe or non-severe." (Doc. 13 at 7). Confusingly, Plaintiff cites to the numerous points in the ALJ's decision where the ALJ discusses Plaintiff's oxygen use. Specifically, Plaintiff cites the ALJ's analysis in which she stated, "[s]ince the claimant uses oxygen, the residual functional capacity allows for no work near open flames, extreme nonweather related heat, and flammable chemicals." (*Id.* at 6). The ALJ's decision clearly reflects consideration of the limitations associated with Plaintiff's oxygen use. Thus, even assuming the ALJ's failure to include Plaintiff's oxygen dependency as a severe impairment was error, it was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding any error in failing to include a diagnosis to be harmless when the decision reflects consideration of the corresponding limitations).

### C.    Dr. Meier's Opinions

Third, Plaintiff argues that the ALJ accorded inadequate weight to the opinion of Plaintiff's primary care physician, Dr. Meier. (Doc. 13 at 8).

For social security claims filed prior to 2017, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted).

"The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). ALJs generally give more weight to medical opinions from treating physicians "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Should the ALJ decide not to give the treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray*, 554 F.3d at 1228 (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). Nevertheless, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

In giving Dr. Meier's opinion little weight, the ALJ opined:

> In an undated report based on a July 3, 2017 physical examination, Marshall Meier, M.D., summarized the claimant's imaging of degenerative disc disease, and concluded that increased stress on his lumbar spine [sic] but makes him a poor surgical candidate to correct the issue. The claimant was also not able to undergo any interventional procedures for pain relief secondary to his weight (Exhibit 21F at p. 3). The opinion is given little weight. No limitations are opined. While it is true that claimant has degenerative disc disease and morbid obesity as noted in this exhibit, the physical examination by Dr. Meier does not support greater limitations than in the residual functional capacity, which is consistent with and supported by the objective and clinical findings. Moreover, contrary to the conclusion, the record discloses that the claimant was actually given interventional procedures, such as epidural steroid injections (Exhibit 36F), despite his weight. Similar to clinical findings elsewhere in the record, the physical examination of Dr. Meier showed normal range of motion of lumbar spine, with normal gait, intact sensation, full strength, and full range of motion in the lower extremities, as well as normal work [sic] of breathing in the lungs (Exhibit 22F at p. 2). It is noted that in his physical examination at Exhibit 22F, Dr. Meier advised the claimant to increase his activity level and to decrease his weight, which suggest [sic] the claimant being deconditioned, rather than disabled.

(Doc. 10-10 at 26). Plaintiff's argument focuses on the fact that Dr. Meier advised that Plaintiff would potentially be a good surgical candidate if he was able to lose weight. (Doc. 13 at 10). However, as stated by the ALJ, this opinion does not focus on any limitations on Plaintiff's ability to perform work. Although Dr. Meier stated that Plaintiff might be a good surgical candidate and opined on the imaging of Plaintiff's degenerative disc disease, he didn't give limitations associated with those findings, and his physical examination showed normal range of motion, normal gait, intact sensation, full strength, full range of motion in the lower extremities, and normal breathing. (*Id.*) The RFC already incorporates Plaintiff's obesity and degenerative disc disease. Thus, contrary to Plaintiff's assertion that the ALJ did not point to anything specific to support her discounting Dr. Meier's opinion, the Court finds that the ALJ gave clear and convincing reasons supported by substantial evidence to reject the opinion.

- 12 -

### D.      Former Work as a Chief Security Guard

Plaintiff argues fourth that the ALJ did not support her finding that Plaintiff could return to his former work as a chief security guard with substantial evidence. (Doc. 13 at 13).

"At Step Four, claimants have the burden of showing that they can no longer perform their past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support [her] conclusion." *Pinto*, 249 F.3d at 845. "To determine whether a claimant has the [RFC] to perform his past relevant work, the [ALJ] must ascertain the demands of the claimant's former work and then compare the demands with his present capacity." *Villa v. Heckler*, 797 F.2d 794, 797–98 (9th Cir. 1986); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "This requires specific findings as to the claimant's [RFC], the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Pinto*, 249 F.3d at 845.

The ALJ found that Plaintiff retained the RFC to perform his past relevant work as actually performed. (Doc. 10-10 at 26). Plaintiff contends that the ALJ's Step Four determination is not supported by substantial evidence because the ALJ "laid no foundation to support the VE's opinion—and the ALJ's finding—that the security guard job was Light while the Chief Guard position was Light but Sedentary as performed." (Doc. 13 at 13).

A claimant will be found "not disabled" when it is determined that he retains (1) the RFC to perform the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required across the country. *Pinto*, 249 F.3d at 845; *see also Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) ("A claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy."). "Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82–61,

and the claimant's own testimony, SSR 82–41." *Pinto*, 249 F.3d at 845; *Lewis*, 281 F.3d at 1083; *see also* S.S.R. 82-62, 1982 WL 31386, at \*3 (S.S.A.) ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands and nonexertional demands of such work.").

Here, Plaintiff testified at the administrative hearing about the duties of his past relevant work, and the ALJ relied on Plaintiff's testimony and the testimony elicited by the VE in determining Plaintiff retained the RFC to perform his past relevant work as actually performed. (Doc. 10-10 at 27). Specifically, the VE asked additional questions of Plaintiff to determine the extent of physical activity involved in his relevant past work as a Chief Security Guard. (*Id.* at 65–66). The VE inquired as to how much weight Plaintiff lifted or carried and the amount Plaintiff stood during the day in this role. (*Id.*) Plaintiff responded that he "never really had to lift anything really heavy" and he "did the majority of his day sitting" in response to the VE's questions. In determining Plaintiff has the RFC to perform his past relevant work as actually performed, the ALJ relied on Plaintiff's description of his job duties, as is allowed, *see, e.g.*, *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir .1993) (claimant's description of past work is considered highly probative); *Santiago v. Sec. of Health & Human Servs.*, 944 F.2d 1, 5 (1st Cir. 1991) (per curiam) ("The ALJ is entitled to rely upon a claimant's own description of the duties involved in her former job."), and based on Plaintiff's description and the testimony of the VE, the ALJ found Plaintiff has the RFC to perform his past relevant work. *See, e.g.*, *Abreu v. Astrue*, 303 Fed.Appx. 556, 558–59 (9th Cir. 2008) ("[Claimant's] testimony itself provides substantial evidence to support the ALJ's conclusion that [claimant] could perform his past relevant work as a customer service representative."); *Giordano v. Astrue*, 304 Fed.Appx. 507, 509 (9th Cir. 2008) ("It was . . . reasonable for the ALJ to conclude that [the claimant] could return to her past relevant work, given that [the claimant's] own description of her past jobs accommodated all of the limitations."). Thus, Plaintiff has not met his burden of demonstrating he is unable to perform his past relevant work.

Plaintiff finally argues that the other jobs given by the VE do not exist in large enough numbers to meet the standard of Significant Jobs in the National Economy and rather fall into the category of "isolated jobs existing in very limited numbers" as explained by the court in *Gutierrez v. Commissioner of Soc. Sec.*, 740 F.3d 519 (9th Cir. 2014). The Court will not address this argument because the ALJ properly found that Plaintiff could return to his past relevant work as a Chief Security Guard at Step Four of the analysis.

**IV.    CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 17th day of July, 2024.

James A. Teilborg
Senior United States District Judge